CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED
4/10/2023
LAURA A. AUSTIN, CLERK
BY: s/ ARLENE LITTLE
    DEPUTY CLERK

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF VIRGINIA

LYNCHBURG DIVISION

| | |
|---|---|
| GREGORY SCOTT ELLINGER, <br><br> *Plaintiff*, <br><br> v. <br><br> DEPUTY SHERIFF ERIN NAPIER, *et al.*, <br><br> *Defendants*. | CASE NO. 6:22-cv-19 <br><br> MEMORANDUM OPINION <br><br> JUDGE NORMAN K. MOON |

This case comes before the Court on cross-motions for summary judgment, Dkts. 24, 26. Plaintiff brings a due process claim, gross negligence claim, and vicarious liability claim. Plaintiff's motion for summary judgment will be denied and Defendants' motion for summary judgment will be granted because (1) Plaintiff fails to establish a due process claim; (2) there is no cognizable state law claim underlying the gross negligence claim; and (3) without underlying tortious conduct by Defendant Deputy Napier, there is no action for which Defendant Sheriff Viar can be held vicariously liable.

**Background**

Defendant Erin Napier, while an Amherst County Deputy Sheriff, stopped Plaintiff Gregory Ellinger on August 7, 2020 because he was driving with a broken taillight. Dkt. 25 (Ex. 1) at 9 (Napier Dep.). Deputy Joseph H. Napier was also involved in the incident. Dkt. 27 (Ex. A) (Napier Decl.). There was no summons issued for a broken taillight. Dkt. 25 (Ex. 1) at 9. And Defendant Napier knew Ellinger from an arrest in 2018. *Id.* at 8. Defendant Napier requested

1

consent to search Ellinger's truck, which Ellinger provided. *Id.* at 10. Defendant uncovered "a little antique" gun under the driver's seat during his search. *Id.*; Dkt. 25 (Ex. 2) at 14:23–24 (Body Camera Video). Ellinger denied being aware of the pistol. *Id.* at 12:25–13:19 ("I did not know it was in there. . . . See I'm bear hunting, and uh, so . . ."). He acknowledged he had a prior non-violent felony conviction, and he elaborated that he was not on probation and almost had his gun rights back. *Id.* at 13:19–33. Defendant Napier had already found a marijuana pipe in the car, and after Ellinger told her that he did not have the gun purposefully, Defendant Napier accused Ellinger of lying to her about having a marijuana pipe in his car. *Id.* at 13:36–52 ("So you were just so high that you forgot you had a pipe in there, too? So you lied to me about that.").

Defendant Napier filed an incident report stating that Ellinger "forgot [the pistol] was in there" and that he "takes the pistol with him while he's bear hunting for protection." Dkt. 25 (Ex. 3) at 2. Ellinger was charged with possession of a weapon within 10 years of a non-violent felony in violation of Virginia Code § 18.2-308.2. Dkt. 25 (Ex. 4) at 11 (Carwile Dep.). Defendant Napier's report was "not intended to serve as a verbatim transcript of the event." Dkt. 27 (Ex. A) ¶ 5 (Napier Decl.).[1]

Assistant Commonwealth Attorney Carwile, who prosecuted Ellinger, relied on Defendant Napier's incident report and did not interview her prior to trial. *Id.* at 7. But he also confirmed that he would not typically meet with the arresting officer for this kind of case, and he understood her incident report to be a summary of the event based on her memory, rather than a verbatim report. Dkt. 27 (Ex. D) at 7:5–16, 17:20–18:3. Judge Michael Garrett of the Amherst County Circuit Court found Ellinger guilty of the charged offense. Dkt. 25 (Ex. 5) at 45:21–25;

---

[1] Defendant Napier has explained that "[w]hen preparing reports, if [she] intended a verbatim statement, it was [her] habit and practice to place such a verbatim statement in quotes," *id.*, which she did not do for Ellinger's statement in the incident report here.

2

47:5–49:21 (finding that Ellinger knew the pistol was operable based on his statement in the incident report and that he "basically admit[ed] possession of the firearm," based on the incident report statements).

Assistant Commonwealth Attorney Carwile has explained that (1) he may have been "peripherally" aware that body camera footage existed, (2) that video was not in the file he provided to Ellinger's initial defense counsel as discovery, (3) a defense attorney could have asked for the video, and (4) Carwile would have made it available if asked. Dkt. 25 (Ex. 4) at 7:19–21 (Carwile Dep.); Dkt. 27 (Ex. D) at 7:19–25, 8:1–4, 15:10–13 (Carwile Dep.).[2] Ellinger's court-appointed attorney, Michael Lovell, confirmed that the Commonwealth Attorney's Office had an open file policy, and the practice for obtaining exculpatory evidence was to communicate directly with the prosecutor's office rather than with law enforcement. Dkt. 27 (Ex. E) at 7:4–10, 11:7–13, 19:5–10 (Lovell Dep.).[3]

Further, Michael G. Weigland, Jr., the IT administrator responsible for the body worn camera and dash camera systems for the Amherst County Sheriff's Office, has confirmed the following: Joseph Napier's camera footage of the incident was uploaded on August 8, 2020. Dkt. 27 (Ex. B) ¶ 4 (Weigland Decl.). Erin Napier's footage was uploaded October 1, 2020. *Id.* The Amherst County Commonwealth's Attorney had immediate access to this footage once uploaded. *Id.* ¶ 2. And deputies did not have the ability or authority to delete the footage or deny or alter the Commonwealth Attorney's Office's access to it. *Id.* ¶ 3.

---

[2] He also confirmed that no one "withheld" the footage from his office. *Id.* at 14:21–23.

[3] Assistant Commonwealth Attorney Carwile also confirmed that his office had an open file policy for body camera footage, meaning defense attorneys had access to it. Dkt. 27 (Ex. C) at 5:1–4 (Carwile Dep.).

3

Ellinger hired new counsel, Aaron Peake, before his sentencing, and Peake sought, received, and viewed the body camera footage. Dkt. 25 (Ex. 4) at 15 (Carwile Dep.). Peake moved for a new trial, and after Judge Garrett reviewed the body camera footage, he vacated the conviction. *Id.* at 10:14–18 ("Judge Garrett basically said that he had hung his hat on . . . when Ellinger said I forgot and that it was different than if Ellinger was saying I didn't know. But he also said that it was close enough that he could understand why Officer Napier would remember it that way.").

Defendant Napier has since acknowledged after viewing the video that Ellinger never admitted to knowing the gun was in the vehicle, "but the totality of the events and what was spoken . . . infers that he had knowledge of the weapon is where [her] memory went while [she] was writing this incident report." Dkt. 25 (Ex. 1) at 17:8–16 (Napier Dep.). She has explained that when writing her report she "inferred" that Ellinger used the gun for protection, based on his comments about bear hunting, and in her deposition she maintained that he said he uses the gun to go bear hunting. *Id.* at 15:9–16:3 ("The difference was that I had noted in my report from my memory that he goes bear hunting and uses it for protection. So I have – when I was writing the report, I inferred that he was using it for protection. And then when I viewed the body camera footage yesterday, he had said that he uses it to go bear hunting.").

## Standard of Review

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if a reasonable [fact finder] could return a verdict for the nonmoving party," and "[a] fact is material if it might affect the outcome of the suit under the governing law." *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018).

4

The moving party bears the burden of establishing that summary judgment is warranted. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If the moving party meets this burden, the nonmoving party must set forth specific, admissible facts to demonstrate a genuine issue of fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The non-movant may not rest on allegations in the pleadings; rather, it must present sufficient evidence such that a reasonable fact finder could find by a preponderance of the evidence for the non-movant. *See Celotex Corp.*, 477 U.S. at 322–24; *Sylvia Dev. Corp. v. Calvert Cnty, Md.*, 48 F.3d 810, 818 (4th Cir. 1995). The district court must "view the evidence in the light most favorable to the nonmoving party" and "refrain from weighing the evidence or making credibility determinations." *Variety Stores, Inc.*, 888 F.3d at 659.

When cross-motions for summary judgment are before a court, a court must "consider each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Defs. of Wildlife v. N.C. DOT*, 762 F.3d 374, 392 (4th Cir. 2014) (quoting *Bacon v. City of Richmond, Va.*, 475 F.3d 633, 638 (4th Cir. 2007) (internal quotation marks omitted)).

## Analysis

**A. Evidence Does Not Support That Defendant Napier Violated Plaintiff's Due Process Rights**

Law enforcement officers can violate a defendant's due process rights by withholding exculpatory material, but Defendant Napier did not do so. *Owens v. Baltimore City State's Attorneys Office*, 767 F.3d 379, 396 (4th Cir. 2014) ("[A] police officer violates a criminal defendant's constitutional rights by withholding exculpatory evidence from prosecutors."). There is no evidence that Defendant Napier withheld exculpatory evidence. The Assistant Commonwealth's Attorney, the IT administrator responsible for body camera and dash camera

5

systems, and Ellinger's initial defense attorney admitted as much. Erin Napier's body camera footage was uploaded on October 1, 2020, four months before Ellinger's trial, which began February 3, 2021, and Joe Napier's footage had been uploaded on August 8, 2020. Dkt. 27 (Ex. B) ¶ 4 (Weigland Decl.). The prosecutor's office had an open file policy. Dkt. 27 (Ex. C) at 5:1–4 (Carwile Dep.); Dkt. 27 (Ex. E) at 7:4–10, 11:7–13, 19:5–10 (Lovell Dep.). And the Supreme Court has held that when a prosecutor maintains an open file policy "defense counsel may reasonably rely on that file to contain all materials the State is constitutionally obligated to disclose under *Brady*." *Strickler v. Greene*, 527 U.S. 263, 283 n.23 (1999) (referencing *Brady v. Maryland*, 373 U.S. 83 (1963)); *Long v. Hooks*, 972 F.3d 442, 468–69 (4th Cir. 2020).

"To make out a claim that [a law enforcement officer] violated his constitutional rights by suppressing exculpatory evidence, [a plaintiff] must allege, and ultimately prove, that (1) the evidence at issue was favorable to him; (2) the [officer] suppressed the evidence in bad faith; and (3) prejudice ensued." *Id.* at 396–97 (internal citations omitted). Ellinger argues that the issue before the Court is the existence of bad faith, as Defendant Napier crafted an incident report with contrary facts to that which the body camera footage showed occurred. Dkt. 25 at 4–5.

Bad faith can be inferred from the conduct of the officer failing to provide clearly exculpatory information to the defendant. *See, e.g.*, *Johnson v. Balt. Police Dep't*, Civil No. ELH-19-00698, 2020 WL 1169739, at *24 (D. Md. Mar. 10, 2020) ("A plaintiff need not demonstrate bad faith directly; it can be inferred through gross deviations from routine police conduct . . . Moreover, bad faith can be inferred when police officers fabricate evidence and fail to disclose especially pertinent exculpatory evidence."); *McPherson v. Balt. Police Dep't*, 494 F. Supp. 3d 269, 282 (D. Md. 2020). "The presence or absence of bad faith by the police for purposes of the Due Process Clause must necessarily turn on the police's knowledge of the

6

exculpatory value of the evidence at the time it was lost or destroyed." *Ariz. v. Youngblood*, 488 U.S. 51, 56 n.* (1988) (internal citation omitted).

While Ellinger argues that "there are no facts in this case on which to infer that [he] made the admissions attributed to him in Deputy Napier's incident report," Dkt. 25 at 5,[4] evidence indicates that the opposite is true. Evidence shows that Defendant Napier did not intend for her incident report to be a verbatim transcript of what occurred, the prosecutor had access to the body camera footage, and Defendant Napier's memory of the incident is substantially similar to that which the footage shows. Dkt. 27 (Ex. A) ¶ 5 (Napier Decl.); Dkt. 25 (Ex. 4) at 7:19–21 (Carwile Dep.); Dkt. 27 (Ex. D) at 7:19–25, 8:1–4, 15:10–13 (Carwile Dep.); *compare* Dkt. 25 (Ex. 2) (Body Camera Video) *with* Dkt. 25 (Ex. 3) at 2 (Incident Report); *see also Abusamhadaneh v. Taylor*, 873 F. Supp. 2d 682, 720 (E.D. Va. 2012) ("A misstatement or inaccurate answer that results from faulty memory or innocent mistake does not constitute an intentionally false statement.") (quoting *U.S. v. Hovsepian*, 422 F.3d 883, 887 (9th Cir. 2005)).

Defendants also argue that even if a constitutional violation occurred, Defendant Napier would be entitled to qualified immunity. Dkt. 27 at 13. When state actors' conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known, qualified immunity shields them from liability. *Turner v. Thomas*, 930 F.3d 640, 644 (4th Cir. 2019). "A government official violates clearly established law when, at the time of the challenged conduct, the contours of the right are sufficiently clear such that every reasonable

---

[4] Plaintiff further argues that "[i]f Defendant forgot what [Plaintiff] said and she believed that he knew the gun was in the truck, she simply could have said so in her report. Instead, she made up several admissions certain to prejudice [his] defense without giving him the opportunity to rebut those statements with the truth." Dkt. 25 at 5. While she certainly could have said she forgot what he said in her report, this does not change that the evidence supports that she did not act in bad faith.

7

official would understand that what he is doing violates that right—in other words, the legal question must be 'beyond debate.'" *Doe v. Rector & Visitors of George Mason Univ.*, 132 F. Supp. 3d 712, 725 (E.D. Va. 2015) (citing *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). The Fourth Circuit treats as relevant the decisions of the U.S. Supreme Court, the Fourth Circuit, and the highest court of the state in which the conduct occurred. *Doe ex rel. Johnson v. S.C. Dep't of Soc. Servs.*, 597 F.3d 163, 176 (4th Cir. 2010).

There is no clearly established law requiring a law enforcement officer to provide exculpatory evidence directly to a criminal defense attorney when the evidence had been provided to the prosecutor months before trial and made available via an open file policy. There was also no clearly established law requiring a law enforcement officer to ask if a prosecutor provided a defense attorney with the exculpatory evidence. Nor was there clearly established law requiring the officer to ensure a defense attorney sought such evidence from a prosecutor. And no clearly established law put Defendant Napier on notice that her incident report needed to be a verbatim match with her body camera footage. Thus, she is entitled to qualified immunity because a reasonable officer in her position would reasonably expect that she complied with the law by submitting her body camera footage four months prior to the trial.

Therefore, the Court will deny Ellinger's motion for summary judgment on this claim and grant Defendant's motion for summary judgment on this claim.

## B. Evidence Does Not Support That Defendant Napier's Conduct Constitutes Gross Negligence Under Virginia Law

Both parties move for summary judgment on Ellinger's claim that Defendant Napier's conduct constitutes gross negligence under Virginia law.

First, there is no cognizable duty giving rise to a private right of action in state law under these facts. Under Virginia law, the prosecutor is responsible for providing exculpatory evidence

8

to a criminal defendant, and Defendant Napier provided the evidence to the prosecutor, who allowed defense counsel to access it through an open file policy. Dkt. 27 (Ex. B) ¶¶ 2–4 (Weigland Decl.); Dkt. 27 (Ex. D) at 7:19–25, 8:1–4, 15:10–13 (Carwile Dep.); Va. R. Sup. Ct. 3A:11; *Workman v. Commonwealth*, 636 S.E.2d 368 (Va. 2006); *Strickler*, 527 U.S. at 283 n.23. No Virginia common law or statutory duty governs what an officer must include in an incident report. Without a cognizable duty, there cannot be a cause of action for an injury. *Jeld-Wen, Inc. v. Gamble*, 501 S.E.2d 393, 396 (1998) ("Without a legal duty there can be no cause of action for an injury.").

And even if a cognizable underlying duty existed, Defendant Napier's conduct does not rise to the level of gross negligence. The Supreme Court of Virginia has defined gross negligence as:

> the utter disregard of prudence amounting to complete neglect of the safety of another. It is a heedless and palpable violation of the legal duty respecting the rights of others which amounts to the absence of slight diligence, or the want of scant care. Several acts of negligence which separately may not amount to gross negligence, when combined may have a cumulative effect showing a form of reckless or total disregard for another's safety. Deliberate conduct is important evidence on the question of gross negligence. Whether gross negligence has been established is usually a matter of fact to be decided by a jury.

*Volpe v. City of Lexington*, 708 S.E.2d 824, 828–29 (Va. 2011) (quoting *Chapman v. City of Virginia Beach*, 475 S.E.2d 798, 800–01 (Va. 1996). Further, "[d]eliberate conduct is important evidence on the question of gross negligence." *City of Lynchburg v. Brown*, 613 S.E.2d 407, 410 (Va. 2005) (internal citations and quotations omitted). For example, the Supreme Court of Virginia found that a Boy Scout leader was not grossly negligent when he brought a minor decedent into the Rappahannock River on a submerged sandbar and let the minor "walk" back without supervision because, despite knowing that the minor decedent could not swim, the leader

9

exercised "some degree of diligence and care" by trying to swim to the minor to rescue him. *Elliott v. Carter*, 791 S.E.2d 730, 732 (Va. 2016).

Ellinger argues that Defendant Napier showed gross negligence because she "purposely deviated from what she heard in order to firmly establish that Ellinger knew the gun was in the truck," when writing her incident report, thus demonstrating gross negligence. Dkt. 25 at 6. But the evidence does not support that Ellinger's conduct amounts to gross negligence, given the standard's high bar. Her memory of the events, as captured in the report—which she did not intend to be a verbatim transcript of the incident—was substantially like the content in the body camera footage. And she made the body camera footage available to the prosecutor's office, which then made it available to Ellinger's defense counsel through an open file policy. The Court will thus deny Ellinger's motion for summary judgment and grant Defendant's motion for summary judgment for the gross negligence claim.

### C. There Can Be No Supervisory Liability Claim

Because Plaintiff's claims against Defendant Napier will be denied on summary judgment, the vicarious liability claim will likewise be denied on summary judgment. There can be no vicarious liability claim without an underlying claim against Defendant Napier.

### Conclusion

For the foregoing reasons, Defendants' motion for summary judgment will be granted and Plaintiff Ellinger's motion for summary judgment will be denied.

*  *  *  *

The Clerk of the Court is hereby directed to send this Memorandum Opinion to all counsel of record.

Entered this **10th** day of April, 2023.

*/s/ Norman K. Moon*
NORMAN K. MOON
UNITED STATES DISTRICT JUDGE